# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7033 | **DATE** | 9/6/2002 |
| **CASE TITLE** | Fabrica De Tejidos Imperial vs. Brandon Apparel Group | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in memorandum opinion and order, Tejidos' motion for summary judgment on Count I is granted liability, (23-1) while Brandon's motion is denied (18-1). Counts II and IV are dismissed as moo status hearing is set for September 16, 2002 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Documen Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 0 9 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | CDY | 36 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 SEP -6 PM 3:42 | 9/5/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FABRICA DE TEJIDOS IMPERIAL, S.A., )
)
               Plaintiff, )
)
v. ) No. 00 C 7033
)
BRANDON APPAREL GROUP, INC., )
et al., )
)
               Defendants. )

DOCKETED

SEP 0 9 2002

## MEMORANDUM OPINION AND ORDER

Fabrica de Tejidos Imperial, S.A. ("Tejidos") has filed a diversity of citizenship action against Brandon Apparel Group, Inc. ("Brandon") and two other defendants,[1] alleging as to Brandon that it has failed to pay for goods provided by Tejidos.[2] Both Tejidos and Brandon have filed motions for partial summary judgment under Fed. R. Civ. P. ("Rule") 56 on Complaint Counts I (Breach of Contract) and III (Account Stated).

With both motions now having been fully briefed, they are

---

[1] Tejidos' First Amended Verified Complaint ("Complaint") also included a Count II claim of Breach of Contract against Ronald Boarman ("Boarman") and Amron Apparel, Inc. ("Amron"), on which default judgment was granted to Tejidos on March 15, 2001.

[2] Diversity jurisdiction is clearly present: Tejidos' place of incorporation and principal place of business are both in Guatemala; Brandon is a Delaware corporation with its principal place of business in Illinois; Boarman is an Indiana citizen; assertedly inactive corporation Amron's state of incorporation and its principal place of business were both in Indiana (Boarman is alleged to do business in the Amron name); and the amount in controversy exceeds $75,000.

ripe for disposition.[3] For the reasons stated in this memorandum opinion and order, Tejidos' motion for summary judgment on Count I is granted as to liability, while Brandon's motion is denied. Counts III (Account Stated) and IV (Restitution) are dismissed as moot.

Summary Judgment Standards

Familiar Rule 56 principles impose on each movant the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a

---

[3] Both movants have attempted, with mixed results, to comply with this District Court's LR 56.1, which is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to Brandon's LR 56.1(a)(3) statement as "B. St. ¶ --" and to Tejidos' LR 56.1(a)(3) statement as "T. St ¶ --." Brandon's response to Tejidos' LR 56.1(a)(3) statement as cited as "B. Resp. ¶ --." This opinion employs the same "B." and "T." abbreviations when referring to the parties' exhibits and memoranda. Because Tejidos' counsel has failed to number the pages of its memorandum, this Court has had to do so manually. Those numbers appear in brackets in any citations to T. Mem.

verdict for the nonmoving party."

Where as here cross-motions for summary judgment are involved, it is thus necessary to adopt a dual perspective--one that this Court has often described as Janus-like--that sometimes involves the denial of both motions. As the ensuing discussion reflects, this opinion has been faithful to that approach, but the required dual perspective does not frustrate a definitive resolution here.

## Facts

Tejidos is a Guatemalan business that provides clothing items for retail sale (T. St. ¶11). Brandon was[4] in the business of manufacturing and selling children's licensed apparel to retailers in the United States (T. St. ¶12).

In about June 1998 Boarman of Amron communicated with Tejidos to negotiate the order of certain clothing items for sale in the United States (T. St. ¶14). Boarman was acting on behalf of Brandon, which had earlier issued a number of purchase orders for Tejidos goods (T. St. ¶15, T. Exs. A & B).[5] At about that

---

[4] Brandon went out of business at some point after the events that gave rise to this action.

[5] B. Resp. purports to deny a number of the assertions in T. St., but Brandon either fails to provide any citations to the record to support those denials or cites to evidence that simply does not contradict the T. St. statements (see, e.g., B. Resp. ¶¶15-16, 19-21, 23-33). In each such instance Tejidos' statement is deemed admitted under LR 56.1(b)(3)(B) (see, e.g., Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2001)). Still other references to T. St. paragraphs are to

3

time Brandon placed an order with Tejidos for F.O.B. delivery of 6461 dozen pieces of clothing (T. St. ¶16). Tejidos delivered those goods to Brandon in about June 1998, and Brandon admits that it received them (T. St. ¶¶17-18). Brandon then delivered the goods to its own customers (T. St. ¶19).

Tejidos' total sale price for the goods was $128,657.11, and it rendered itemized invoices aggregating that amount to Brandon (T. St. ¶¶23, 28). Brandon received the invoices[6] but never paid any part of the purchase price to Tejidos (T. St. ¶¶25, 29). About two months after receiving the goods, Brandon communicated to Tejidos through Boarman that it believed the goods were late, of poor quality and defective (T. St. ¶31, B. Resp. ¶31).

Tejidos claims actual damages in the amount of $128,657.11, plus $174,000 in consequential damage and plus legal expenses (T. St. ¶27). Brandon denies liability for any amount whatever.

## Breach of Contract

Under well-settled Illinois law[7] the elements for a breach of contract claim are (1) the existence of a valid and

---

statements expressly admitted by Brandon.

[6] Although B. Resp. ¶¶28-29 purport to deny (again without any record citations) that Brandon ever received invoices from Tejidos, Brandon's Second Amended Answer ¶26 expressly admitted receipt of such invoices.

[7] Both movants have briefed the issues in terms of Illinois law (see B. Mem. 4, T. Mem. [3]), and this opinion accordingly looks to that source of substantive law.

enforceable contract, (2) plaintiff's performance of the
contract, (3) defendant's breach of the contract and (4) a
resulting injury to the plaintiff (see Priebe v. Autobarn, Ltd.,
240 F.3d 584, 587 (7th Cir. 2001)). Both sides seek summary
judgment on the Complaint's Count I breach of contract count.

Brandon argues that it is entitled to summary judgment
because Tejidos has failed to prove the very first element of
that claim: the existence of a valid and enforceable contract
between them. In support of its position Brandon points to (1)
the lack of any written agreement signed by the two parties and
(2) a statement by Tejidos' General Manager that he did not know
Brandon's name until about two weeks before the goods were
shipped (B. Mem. 4-5). Brandon also spends a great deal of time
arguing that Tejidos cannot prove that Boarman was Brandon's
agent (see B. Mem. 5-8). But all of its contentions miss the
vital point: Brandon fails utterly to appreciate the role that
its own purchase orders, all of which were approved by Brandon's
CEO and listed Tejidos' name and address in the "Factory
Information" section, played in the formation of a contract.[8]

---

[8] Tejidos has provided copies of 14 separate purchase
orders prepared by Brandon on its own Purchase Order forms, ten
of which are specifically directed to Tejidos and list its name
in two places (T. Ex. A) and the other four of which include the
names of both Tejidos and Amron, identifying Tejidos as the
factory ordered to produce the goods (T. Ex. B). Brandon's only
reference to its own purchase orders is its utterly mystifying
assertion--contradicted by all available documentation--that only
one purchase order listed Tejidos' name and that order was issued

Illinois has adopted the Uniform Commercial Code ("UCC"), which provides in relevant part (810 ILCS 5/2-206(b)[9]):

> [A]n order or other offer by buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods....

Under that provision (1) each Brandon purchase order constituted an offer and (2) Tejidos' shipment of goods to Brandon in response to each order acted as an acceptance of that offer. We are taught in the first year of law school that offer plus acceptance equals contract. Tejidos has thus established the first element of a breach of contract claim.

Brandon also attempts to dispute the second element--Tejidos' performance of the contract--by claiming that the goods were non-conforming because they were late and defective. But Brandon has offered no evidence as to any nonconformity--and even if it had, that would not itself denote Tejidos' failure to perform. Under UCC §§602 and 606 a buyer is deemed to have accepted non-conforming goods unless the buyer rejects those goods within a reasonable time and seasonably notifies the

---

by mistake (B. R. Mem. 4-5). Much as Brandon may wish that it could make the other 13 orders evaporate by sheer force of will, that is well beyond its powers.

[9] All relevant provisions of the UCC are part of its Article 2, the Illinois version of which is codified at 810 ILCS 5/2. Further citations to the statute will take the form "UCC § --," omitting that prefatory ILCS locution.

6

seller. In the absence of Brandon's timely rejection and seasonable notification, Tejidos must be viewed as having fully performed its obligations under the contract.

Not only does none of the evidence presented by Brandon establish that it rejected the goods--it does not even raise an issue of material fact on that issue. Brandon contends only that it told both Boarman and Tejidos that it considered the goods to be defective (B. St. ¶10), but even apart from any questions about whether those statements were "seasonable,"[10] a complaint about the quality of goods is simply not the same thing as a rejection.

On that score, at no time did Brandon tell either Boarman or Tejidos that it was rejecting the goods. Brandon's only shred of evidence that even remotely supports such a notion is the deposition testimony of Brandon's President Bradley Keywell ("Keywell")--and all he said in that respect is that he did not know when or how Brandon rejected any Tejidos' shipment, but that Brandon followed a general procedure of letting Boarman know that Brandon could not accept the goods (Keywell Dep. 48, B. Resp. Ex C). But any such generalized and conclusory assertion, unsupported as it is by any specific statement as to a real turndown of the goods, is insufficient to raise a genuine issue

---

[10] Brandon first complained about the goods' quality in an August 20, 1998 letter (B. St. Ex. C), about two months after it began to receive the goods.

for trial on the question of rejection.

Indeed, Brandon's actual behavior was wholly consistent with acceptance rather than rejection of the goods. Under UCC §606(c) any act taken by a buyer that is inconsistent with the seller's continued ownership operates as an acceptance of the goods. Resale of goods--even <u>after</u> a timely rejection--has long been recognized as inconsistent with the seller's continued ownership and as constituting an acceptance of the goods (see <u>Moscahlades Bros., Inc. v. Mallars & Co.</u>, 263 F.2d 631, 635 (7th Cir. 1959); <u>Ozite Corp. v. F.C. Clothier & Sons Corp.</u>, 130 Ill. App. 2d 716, 718-19, 264 N.E.2d 833, 834-35 (4th Dist. 1970)). And upon such acceptance the buyer is liable to the seller for the full contract price, regardless of whether or not the goods were conforming.

That is precisely what happened here. After it received the clothing items Brandon invested $2,800 in decorating them (October 19, 1998 Memo, provided in B. Ex. C)), and it then resold them to its own customers (B. Interrog. Ans. 11; B. St. Ex. C, B. Resp. ¶19; Keywell Dep. 14-15)).[11] Brandon's actions

---

[11] Brandon's CEO Eric Lefkofsky ("Lefkofsky") testified that his "general recollection" was that the goods were <u>not</u> delivered to customers. That statement is contradicted not only by Keywell's testimony but also by documentary evidence (as contrasted with witness recollection): a series of contemporaneous letters and memoranda by Brandon that specifically state that Brandon's customers had complained about defects in the goods. In light of that overwhelming evidence, Lefkofsky's vague recollection cannot raise a genuine question as

of decorating and reselling the goods confirm its acceptance. And such acceptance by Brandon compels the conclusion that Tejidos performed its obligations under the contract and was entitled to the full contract price for the goods.

To summarize, then, the parties' contract was formed when Tejidos accepted each offer contained in Brandon's purchase orders by shipping the ordered goods. Each shipment, whether or not the goods were conforming, was accepted by Brandon, thereby establishing Tejidos' performance under the contract.

Two elements remain for Tejidos to prove a breach of contract: that Brandon breached the contract and that Tejidos was injured as a result. Tejidos has no difficulty with either element, for Brandon (1) admits that it never paid Tejidos for the goods that it received and (2) has not disputed the Tejidos suffered monetary damages by reason of Brandon's failure to pay for the goods.

Hence there is no genuine issue of material fact with respect to any element of Tejidos' breach of contract claim. It has successfully demonstrated its entitlement to summary judgment as to liability on that claim.

## Other Claims

Two additional claims remain: Complaint Count III (Account Stated), on which both parties have moved for summary judgment

---

to whether or not Brandon resold the goods.

9

and Count IV (Restitution), which the parties have not addressed in their current motions.

Under Illinois law (<u>W.E. Erickson Constr., Inc. v. Congress-Kenilworth Corp.</u>, 132 Ill. App. 3d 260, 267, 477 N.E.2d 513, 519 (1st Dist. 1985)):

> An account stated has been defined as an agreement between parties who have had previous transactions that the account representing those transactions is true and the balance stated is correct, together with a promise, express or implied, for the payment of such balance.

Such an agreement is established "where a statement of account is rendered by one party to another and is retained by the latter beyond a reasonable time without objection" (<u>Allied Wire Prods., Inc. v. Marketing Techniques, Inc.</u>, 99 Ill. App. 3d 29, 40, 424 N.E.2d 1288, 1296-97 (1st Dist. 1981)). By failing to object to the statement, the recipient is deemed to have recognized its accuracy (<u>id</u>.).

But an account stated claim "cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed" (<u>Dreyer Med. Clinic, S.C. v. Corral</u>, 227 Ill. App 3d 221, 226, 591 N.E.2d 111, 114 (2d Dist. 1981), quoting earlier cases). So an account stated claim "is merely a form of proving damages for the breach of a promise to pay on a contract" (id.). In effect, then, it is merely an alternate theory for proving the same damages asserted in a breach of contract claim.

10

Because this opinion has already found Brandon liable for breach of contract, Tejidos may not also recover the same damages under the theory of account stated. Count III is therefore dismissed as moot. And while the parties have not made it an issue in their filings, Tejidos' Count IV restitution claim is also mooted for the same reason and is likewise dismissed.

## Conclusion

Because there are no genuine issues of material fact here (something that is suggested, though not really confirmed, by the parties' filing of their cross-motions) and because Tejidos has successfully demonstrated that Brandon breached the contract by failing to pay for the goods it received, Tejidos is entitled to a judgment as a matter of law as to Complaint Count I. Tejidos' Rule 56 motion is therefore granted in part (while Counts III and IV are dismissed as moot), while Brandon's Rule 56 motion is denied.

With those issues having been resolved, Tejidos is entitled to damages stemming from Brandon's breach of contract, but the extent of those damages remains to be determined. For that purpose a status hearing is set for 9:15 a.m. September 16, 2002 to discuss the necessary procedures and timetable to that end.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 6, 2002